IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PETER W. HEIDT,

    Plaintiff,

vs.  Civ. No. 09-905 JP/RHS

WILLIAM P. HEIDT and
ALETA HEIDT,

    Defendants.

MEMORANDUM OPINION AND ORDER

On September 24, 2009, Defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(2), Motion to Dismiss Pursuant to Rule 12(b)(3), Motion to Transfer Due to Forum Non Conveniens, and Motion for a More Definite Statement (Doc. No. 4)(collectively, Motion to Dismiss).  Having reviewed the briefs and relevant law, the Court concludes that Defendant's Motion to Dismiss should be granted in that this lawsuit should be dismissed without prejudice for lack of personal jurisdiction over the Defendants.

*A. Factual Background*

    *1. Plaintiff's Complaint for Damages for Fraud, Conversion and for Specific Performance (Doc. No. 1-2)(Complaint)*

This case was originally filed in state court and properly removed to federal district court on September 18, 2009.  The Plaintiff alleges in the Complaint that Defendants are his adoptive parents and that in January 1990 he was involved in an airplane crash.  Complaint at ¶¶2 and 3.  Plaintiff was eleven years old at that time. *Id.* at ¶3.  Plaintiff further alleges that as a result of the airplane crash he was awarded $158,700 in damages in an out-of-court settlement. *Id.* at ¶4.  According to Plaintiff, Defendant William Heidt was appointed his guardian/trustee to manage

his settlement funds.  *Id*. at ¶5.  Plaintiff alleges that Defendant William Heidt, with Defendant Leta Heidt's knowledge and participation, unlawfully withdrew approximately $100,000 of the settlement fund for his own use and to benefit Defendant Leta Heidt.  *Id*. at ¶¶7-8.  In addition, Plaintiff appears to allege that Defendant William Heidt misappropriated Social Security benefits intended for Plaintiff.  *Id*. at ¶9.  Plaintiff seeks compensatory damages for fraud, conversion, and breach of trust, and seeks punitive damages as well.  *Id*. at pg. 2.  Plaintiff also requests injunctive relief which would require Defendant William Heidt "to provide a complete accounting of all trust funds."  *Id*.

       *2. Defendants' Initial Affidavits*

On September 23, 2009, the Defendants each made virtually identical affidavits in support of their Motion to Dismiss.  The following alleged facts are gleaned from those affidavits.  Defendants lived in New Jersey at the time of the airplane crash in 1990.  ¶2 of the Affidavits.  The airplane crash occurred in New York and the lawsuit to recover damages from the airplane crash was filed in New York.  *Id*. at ¶3.  A settlement agreement with the airline was entered into in New York and the settlement agreement provided that it was to be "'interpreted in accordance with the laws of State of New York.'"  *Id*. at ¶¶4 and 5.  The entire settlement amount of $158,700 was deposited into banks located in the city of New York.  *Id*. at ¶7.  According to Defendants, all but $10,000 of the settlement amount was spent in New Jersey, New York, and New Hampshire.  *Id*. at ¶¶9-10.

In July 2000, when Plaintiff was 19 and a half years old, Defendants and Plaintiff moved to Santa Fe, New Mexico.  *Id*. at ¶12.  Defendants assert that only $10,000 of the settlement fund remained at that time and it continued to be in the same bank accounts as before.  *Id*. at ¶13.  At Plaintiff's request, Defendants state that they spent $9,500 of that money to purchase a car for

Plaintiff and that the remaining $500 was applied toward Plaintiff's expenses. *Id.* at ¶14. When Plaintiff became 21 years old in January 2002, Defendants contend he took control of his finances and "began receiving regular payments from the annuity." *Id.* at ¶17. In May 2003, Defendants moved from New Mexico to Rhode Island. *Id.* at ¶18. In May 2005, Defendants moved back to Santa Fe for about 7 months and then returned to Rhode Island where they now reside. *Id.*

### *3. Plaintiff's Affidavit*

Plaintiff made an affidavit in response to the Defendants' affidavits. Plaintiff contends in his affidavit that although Defendants bought him a car for his use, the title of the car was never in his name, and Defendants took the car away from him after two months. Affidavit of Peter W. Heidt (Doc. No. 10-2) at ¶3.

Plaintiff also lists in his affidavit a series of bank transactions involving Defendant William Heidt and a Merrill Lynch bank account that had been in Plaintiff's name but was unknown to Plaintiff. *Id.* at ¶4. According to Plaintiff, he called the Santa Fe Merrill Lynch office in 2005 to inquire about a check book Defendant William Heidt had left in Plaintiff's Los Pinones apartment in Santa Fe. *Id.* The Merrill Lynch employee told Plaintiff that the account had been closed out by Defendant William Heidt with a check in the amount of $24,000 on January 14, 2005. *Id.* He apparently had also withdrawn $6,200 on that same day. *Id.* Plaintiff obtained from the Merrill Lynch employee the following list of checks drawn on this bank account:

    a. Check #367, dated January 18, 2005, written to Defendant William Heidt for $5,000;

    b. Check #368, dated March 2, 2005, written to Merrill Lynch for $114;

    c. Check #369, dated March 10, 2005, written to Defendant William Heidt for $2,000;

3

    d.  Check #370, dated March 28, 2005, written to Defendant William Heidt for $1,800;

    e.  Check #371, dated March 31, 2005, written to Town of West Greenwich for $1,394.13;

    f.  Check #372, dated April 13, 2005, written to First American Title for $5,000;

    g.  Check #373, dated April 18, 2005, written to Defendant William Heidt for $2,000;

    h.  Check #374, dated April 26, 2005, written to Southwestern Title and Escrow for $10,000;

    i.  Check #375, dated July 18, 2005, written to Plaintiff for $4,000;

    j.  Check #376, dated July 20, 2005, written to USPS for "$W40.00" [sic];

    k.  Check #377, dated August 18, 2005, written to Plaintiff for $1,500;

    l.  Check #378, dated August 26, 2005, written to Defendant William Heidt for $500; and

    m.  Check #379, dated October 13, 2005, written to Defendant William Heidt for $1,800.

*Id*.  Moreover, the Merrill Lynch employee indicated that Defendant William Heidt withdrew $1,935 on October 7, 2005.  *Id*.

    Plaintiff also states that sometime in 2005 he met Defendant William Heidt in Santa Fe. *Id*. at ¶5. During this meeting, Defendant William Heidt had Plaintiff sign a document.  *Id*. Plaintiff contends he did not know what he signed because Defendant William Heidt covered most of the document.  *Id*. Plaintiff further maintains that Defendant William Heidt informed him that he only had $4,000 left and that money was deposited in a Bank of America checking account in Santa Fe.  *Id*.

    Next, Plaintiff states that in 2005 he went to the Welfare Office, presumably in Santa Fe, to apply for food stamps and Medicaid because he was homeless.  *Id*. at ¶6.  The social worker

he spoke with informed him that he was already receiving Social Security Disability benefits.[1] *Id*. Plaintiff told the social worker that he had not received any checks. *Id*. When Plaintiff asked the social worker where the checks were going all she could say was, "I can't tell you, you have to ask your father." *Id*. Plaintiff then informed the social worker to start sending the checks to his own bank account. *Id*. At that point, the social worker noted Plaintiff owed the Social Security Administration approximately $12,000 because he had been working while he was receiving benefits. *Id*. Plaintiff's Social Security benefits would, therefore, be offset until the $12,000 amount is paid. *Id*.

In 2008, Plaintiff went to the Internal Revenue Service (IRS) office in Santa Fe to check on a "supplement check" he was supposed to have received. *Id*. at ¶7. Plaintiff discovered from the IRS clerk that although Plaintiff first filed a tax return in 2008 the records showed that a tax return had been filed in his name in December 2005 which reported Plaintiff's address to be the same as Defendants' Santa Fe address. *Id*. Plaintiff never lived at that address. *Id*.

Finally, Plaintiff notes that he is afraid of flying and "it would be a great hardship" for him to litigate this case outside of New Mexico. *Id*. at ¶8. Plaintiff has continued to reside in New Mexico.

*4. Second Affidavit of William P. Heidt*

Defendant William Heidt filed a second affidavit in response to Plaintiff's affidavit. In the second affidavit, Defendant William Heidt stated that he did not visit Plaintiff's Los Pinones apartment in 2005 because Plaintiff no longer lived there at that time. Ex. B at ¶2 (attached to Defendants' Reply to Plaintiff's Response to Motion to Dismiss Pursuant to Rule 12(b)(2),

---

[1]Plaintiff is legally blind. *Id*.

5

Motion to Dismiss Pursuant to Rule 12(b)(3), Motion to Transfer Due to Forum Non Conveniens and Motion for a More Definite Statement (Doc. No. 14)(Reply)).  According to Defendant William Heidt, he was at the Los Pinones apartment no later than 2003.  *Id*.

Defendant William Heidt also noted in his second affidavit that neither he nor his wife took Plaintiff's car from him.  *Id*. at ¶3.  In addition, Defendant William Heidt noted that his first affidavit erroneously stated that he had moved from New Mexico in May 2003 when in fact he and his wife lived in New Mexico until March 2003.  *Id*.

Finally, Defendant William Heidt stated that "Plaintiff has never demonstrated a fear of flying."  *Id*. at ¶4.  Defendant William Heidt stated that he has personal knowledge of Plaintiff having flown "in 1993, 1994, 1995 and 1996 from Newark, NJ to Albuquerque and back to vacation in Santa Fe."  *Id.*  Defendant William Heidt further stated: "In July of 2000, after we had moved to NM, Plaintiff flew by himself from Albuquerque to Manchester, NH and back to attend summer camp in Alton, NH.  Sometime in 2002 Plaintiff flew with a friend to Las Vegas, NV.  At no time did he express or indicate any fear of flying."  *Id*.

*B. Discussion*

As a preliminary matter, Defendants contend that several portions of Plaintiff's affidavit should be stricken. Defendants then argue that the Complaint should be dismissed for lack of personal jurisdiction or for improper venue.  Alternatively, Defendants argue that the case should be transferred to New York, New Jersey, or New Hampshire and that Plaintiff should be required to file an amended Complaint to make a more definite statement of his claims.

*1. Defendants' Request to Strike Portions of Plaintiff's Affidavit*

Defendants request that the Court strike all hearsay and speculative statements found in Plaintiff's affidavit, and that the Court strike references to the 2005 tax return and the Merrill

Lynch list of bank transactions. *See* Affidavit of Peter W. Heidt showing proposed stricken portions, Ex. A (attached to Reply). Defendants note that Plaintiff has not complied with their request to produce the Merrill Lynch list of bank transactions. To determine the sufficiency of an affidavit, the Court looks to Fed. Rule. Civ. P. 56(e). Although Rule 56(e) addresses the subject of affidavits in the summary judgment context, "its requirements of personal knowledge, admissible facts, and affirmative showing of competency apply to affidavits submitted in support of or in opposition to motions to dismiss on jurisdictional grounds." *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 175 n.6 (10th Cir. 1992). Having reviewed Plaintiff's affidavit, the Court is in agreement with Defendants to the extent that the hearsay and speculative statements should be stricken and not considered by the Court. However, the Court is not precluded from considering the reference to the 2005 tax return and the Merrill Lynch list of bank transactions because Plaintiff had personal knowledge of these items. Defendants' concern regarding the non-production of the Merrill Lynch list of bank transactions is more properly addressed in a motion to compel production.

*2. Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)*

The Court will address first Defendant's argument that this lawsuit should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over the Defendants. The plaintiff has the burden of proving personal jurisdiction. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "'[W]hen a motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing.'" *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995)(citations omitted). The Court must consider the affidavits in the light most favorable to the plaintiff, even if the parties present conflicting affidavits. *Id.*; *Behagen v.*

*Amateur Basketball Ass'n of U. S. A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 10101 (1985).

*a. Whether to Consider the Personal Jurisdiction of Each Defendant Separately*

To begin with, the Court observes that the parties have not considered the personal jurisdiction of each Defendant separately.  Instead, the parties focus on the personal jurisdiction of Defendant William Heidt and seem to imply that any personal jurisdiction the Court may have over Defendant William Heidt would necessarily apply to Defendant Aleta Heidt.  This treatment of Defendant Aleta Heidt's personal jurisdiction raises the question of whether her personal jurisdiction can be based on a co-conspirator theory.  The "acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007)(citation omitted).  To obtain personal jurisdiction on a conspiracy theory, "the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a *prima facie* showing of a conspiracy." *Id*.  In New Mexico, "[a] civil conspiracy requires a 'combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Los Alamos National Bank v. Martinez Surveying Services, LLC*, 140 N.M. 41, 2006-NMCA-081 ¶21 (quoting *Seeds v. Lucero*, 137 N.M. 589, 2005-NMCA-067 ¶12 (internal quotation marks and citation omitted)).

Here, the Plaintiff merely alleges in the Complaint at ¶8 that "Defendant Aleta Heidt was aware of what William Heidt was doing.  She participated in these fraudulent activities and benefitted from the stolen money."  Being "aware" of another's actions hardly constitutes an intent to accomplish an unlawful act with that person.  Moreover, Plaintiff's subsequent sentence and allegation that Defendant Aleta Heidt "participated" in fraudulent activities seems to

contradict the previous sentence alleging that Defendant Aleta Heidt was "aware" of these activities.  Plaintiff, furthermore, fails to allege any facts which show how Defendant Aleta Heidt "participated" in the fraudulent activities or benefitted from those activities.  Without factual allegations to support a *prima facie* showing of a conspiracy between Defendants, the Court must conclude that Plaintiff has not carried his burden of persuading the Court that it should use a conspiracy theory to exercise personal jurisdiction over Defendant Aleta Heidt.  Hence, the Court will consider the issue of personal jurisdiction over Defendant Aleta Heidt separately from the issue of personal jurisdiction over Defendant William Heidt.

### b. *Personal Jurisdiction*

Personal jurisdiction in a diversity action like this one is determined by the law of the forum state.  *Yarbrough v. Elmer Bunker & Associates*, 669 F.2d 614, 616 (10th Cir. 1982).  New Mexico courts apply a three-part test to determine whether personal jurisdiction exists over a non-resident defendant:  (1) the defendant's acts must be enumerated in the New Mexico long-arm statute; (2) the plaintiff's cause of action must arise from the defendant's acts; and (3) the defendant's acts must establish minimum contacts to satisfy constitutional due process concerns.  *Doe v. Roman Catholic Diocese of Boise, Inc.*, 121 N.M. 738, 742, 918 P.2d 17, 21 (Ct. App.), *cert. denied*, 121 N.M. 693, 917 P.2d 962 (1996).  Because the reach of New Mexico's long-arm statute extends as far as constitutionally permissible with the first and third steps equated with the due process standard of minimum contacts, the necessity of a technical determination of whether the non-resident defendant committed an enumerated act has evaporated and the Court searches for the outer limits of what due process permits.  *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 2002-NMCA-030 ¶13, 131 N.M. 772 (2001), *cert. denied*, Nos. 27,285; 27,324 (2002)(quotations and citations omitted).  "Thus, for the court to find personal jurisdiction, a

plaintiff must allege an occurrence that falls within the long-arm statute, and the court must find the requisite minimum contacts to comport with due process." *Id.* (citing *Cronin v. Sierra Medical Center*, 2000-NMCA-082,129 N.M. 521, *cert. denied*, No. 26,515 and 532 U.S. 921 (2001)).

### (1)  The New Mexico Long-Arm Statute

The Defendants argue that they have not engaged in an act enumerated in the New Mexico long-arm statute which would bestow personal jurisdiction on them.  Specifically, Defendants argue that they have not not transacted any business in New Mexico. Plaintiff asserts, however, that Defendants both transacted business in New Mexico and committed a tortious act in New Mexico.  The New Mexico long-arm statute provides in relevant part:

> A.  Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:  (1) the transaction of any business within this state; ... (3) the commission of a tortious act within this state....

NMSA 1978, §38-1-16(A) (1959).

### (a)  Transaction of Business

The New Mexico courts have defined the phrase "transaction of business" as "'doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts.'" *Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 534, 543 P.2d 825, 827 (1975)(quoting Restatement (Second) of Conflict of Laws §35 cmt. a at 142 (1971)). "The determination of whether a party transacted business in the state within the meaning of the long-arm statute, 'must be determined by the facts in each case.'" *CABA Ltd. Liability Co. v. Mustang Software, Inc.*, 1999-NMCA-089 ¶12, 127 N.M. 556, 561 (quoting *Telephonic, Inc.*, 88

N.M. at 534, 543 P.2d at 827).  New Mexico courts examine three factors in determining if "certain conduct constitutes transacting business under the long arm statute:  (1) who initiated the transaction; (2) where the transaction was entered into; and (3) where the performance was to take place."  *Pelton v. Methodist Hosp.*, 989 F.Supp. 1392, 1394 (D.N.M. 1997)(citations omitted).  Other relevant factors include "the voluntariness of the defendant's contact with the State, the nature of the transaction, the applicability of New Mexico law, the contemplation of the parties and the location of likely witnesses."  *Kathrein v. Parkview Meadows, Inc.*, 102 N.M. 75, 77, 691 P.2d 462, 464 (1984).

### *Defendant William Heidt*

Viewing the affidavits in the light most favorable to the Plaintiff, the Court finds that while Defendant William Heidt lived in New Mexico from July 2005 to October 2005 he voluntarily initiated a series of at least five bank transactions with Merrill Lynch for pecuniary benefit.  The completion or performance of these transactions also apparently occurred in New Mexico where they would have likely been subject to various New Mexico laws.  Moreover, witnesses to these bank transactions would more than likely be located in New Mexico.  Finally, Plaintiff's lawsuit arises, at least in part, from these transactions because these transactions allegedly involved Defendant William Heidt's depletion of Plaintiff's bank account without Plaintiff's knowledge or consent.  *See* Complaint at ¶7 (alleging that Defendant William Heidt withdrew money from Plaintiff's settlement "under false pretenses and used it for himself"). The Court, therefore, determines that Plaintiff has made a *prima facie* showing that Defendant William Heidt's actions fell within the New Mexico long-arm statute's enumerated act of "transaction of business."

*Defendant Aleta Heidt*

Plaintiff, however, has failed to allege or make a *prima facie* showing that Defendant Aleta Heidt engaged in any kind of "transaction of business" in New Mexico which formed a basis for his lawsuit. Consequently, the portion of the New Mexico long-arm statute referring to the act of "transaction of business" is not applicable to Defendant Aleta Heidt.

*(b)  Commission of Tortious Act*

*Defendant William Heidt*

Plaintiff further argues that Defendant William Heidt's actions fell within the New Mexico long-arm statute's enumerated act of commission of a tortious act. Viewing the affidavits in the light most favorable to Plaintiff, the Court determines that Plaintiff has presented evidence that while Defendant William Heidt lived in New Mexico in 2005, he committed the torts of conversion and fraud by withdrawing various sums of money from Plaintiff's Merrill Lynch bank account. Plaintiff's causes of actions for conversion and fraud arise in part from these alleged tortious acts. Hence, Plaintiff has made a *prima facie* showing that Defendant William Heidt's actions fell within the New Mexico long-arm statute's enumerated act of commission of a tortious act.

*Defendant Aleta Heidt*

Plaintiff has not provided any evidence that Defendant Aleta Heidt committed the torts of conversion or fraud in New Mexico. The Court cannot, therefore, conclude that Defendant Aleta Heidt's actions fell within the New Mexico long-arm statute's enumerated act of commission of a tortious act. Because Plaintiff has not set forth a *prima facie* case that Defendant Aleta Heidt's actions somehow come under the New Mexico long-arm statute, dismissal of Plaintiff's claims against Defendant Aleta Heidt for failure to establish personal jurisdiction is appropriate.

*(2) Due Process Considerations With Respect to Defendant William Heidt*

Having determined that Plaintiff has sufficiently alleged that Defendant William Heidt's actions fell within the New Mexico long-arm statute, the next question is whether due process considerations would allow the Court to exercise personal jurisdiction over Defendant William Heidt. Defendants maintain that due process considerations would not allow the Court to exercise personal jurisdiction over Defendant William Heidt.  The analysis for determining if there is sufficient due process to exercise personal jurisdiction over a nonresident defendant consists of a two part analysis.  *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005)(citation omitted).  First, due process requires that "'minimum contacts between the defendant and the forum State'" exist.  *Id*. (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  To decide whether there are sufficient minimum contacts, the Court considers "whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id*. (quoting *World-Wide Volkswagen*, 444 U.S. at 297).  Second, if there are sufficient minimum contacts, the Court considers "'whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.'"  *Id*. at 1276-77 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)(quotations omitted)).

*(a) Minimum Contacts*

In deciding if there are sufficient minimum contacts, the Court "examine[s] whether the defendant 'purposefully availed[ed] itself of the privilege of conducting activities within the forum State.'" *Id*. at 1277 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  In other words, there are sufficient minimum contacts "if 'the defendant purposefully directed its activities at residents of the forum, and ... the plaintiff's claim arises out of or results from

13

actions by the defendant himself that create a substantial connection with the forum state.'" *Id*. (quoting *OMI*, 149 F.3d at 1091 (quotations, citations, and emphasis omitted)).  The Court evaluates the quality of the contacts, not necessarily the quantity of contacts.  *Id*. at 1278 and n.5.

In this case, Plaintiff has presented evidence that Defendant William Heidt purposefully directed his activities at a New Mexico resident, Plaintiff, when he conducted bank transactions while living in New Mexico which affected Plaintiff's Merrill Lynch bank account.  As mentioned *supra*, Plaintiff's claims in this lawsuit arise in part from these New Mexico bank transactions.  Moreover, these bank transactions could be seen as creating "a substantial connection" between Defendant William Heidt and New Mexico.  Viewing the affidavits in the light most favorable to Plaintiff, the Court concludes that Defendant William Heidt's "conduct and connection with the forum State [were] such that he should reasonably anticipate being haled into court there."  *See World-Wide Volkswagen*, 444 U.S. at 297.  Plaintiff, therefore, has made a *prima facie* showing that Defendant William Heidt had sufficient minimum contacts with New Mexico to support this Court's exercise of personal jurisdiction over him.

*(b) Traditional Notions of Fair Play and Substantial Justice*

Plaintiff must next present a *prima facie* showing that the Court's exercise of personal jurisdiction over Defendant William Heidt would not offend traditional notions of fair play and substantial justice.  To analyze if the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice," the Court must determine whether "'exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case.'" *Pro Axess*, 428 F.3d at 1279 (quoting *OMI*, 149 F.3d at 1091 (quotations omitted)).  In making this reasonableness determination, the Court considers the following factors:

14

>'(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.'

*Id*. at 1279-80 (quoting *OMI*, 149 F.3d at 1095). To defeat personal jurisdiction, the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id*. at 1280 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### *Burden on Defendant William Heidt*

Although the burden on a defendant of litigating in a foreign forum "'is of primary concern in determining the reasonableness of personal jurisdiction,'" the United States Supreme Court has noted that "'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'" *Id*. (quoting *OMI*, 149 F.3d at 1096 (quotations omitted) and *Burger King*, 471 U.S. at 474). Here, there certainly would be a substantial burden on Defendant William Heidt if he had to defend a New Mexico lawsuit from across the United States in Rhode Island, particularly when Defendant William Heidt apparently no longer engages in economic activity in New Mexico. However, the availability of air transportation as well as various internet and telephone technology would help to lessen that burden.

### *New Mexico's Interest in Resolving the Dispute*

"'States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.'" *Id*. (quoting *OMI*, 149 F.3d at 1096). In this case, the fact that Plaintiff is a New Mexico resident favors New Mexico's interest in adjudicating this lawsuit in New Mexico. Nevertheless, that interest is diminished when one

15

compares the relatively short time Plaintiff has lived in New Mexico with the much longer time he resided outside of New Mexico. Furthermore, it is worth noting that the majority of alleged wrongful conduct appears to have taken place in New York, New Jersey, and New Hampshire, i.e., the states where most of the settlement money was spent.

*Plaintiff's Interest in Convenient and Effective Relief*

This particular factor

> 'hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.'

*Id*. at 1281 (quoting *OMI*, 149 F.3d at 1097).  Viewing the affidavits in the light most favorable to Plaintiff, it is clear that Plaintiff's fear of flying and his apparently limited income (as indicated by his homeless status at one point) would be significant burdens on his ability to litigate in New York, New Jersey, or New Hampshire.

*Interstate Judicial System's Interest in Obtaining Efficient Resolution*

This next factor "asks 'whether the forum state is the most efficient place to litigate the dispute.'"  *Id*. (quoting *OMI*, 149 F.3d at 1097).  This inquiry focuses on "'the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.'"  *Id*. (quoting *OMI*, 149 F.3d at 1097)(citations omitted)).  In this case, the witnesses would be located in New Mexico as well as in New York, New Jersey, and New Hampshire.  However, most of the witnesses would probably be from the East Coast since the majority of the alleged misconduct occurred there.  It would also be more convenient for the East Coast witnesses to

travel to either New York, New Jersey, or New Hampshire than to travel across the country to New Mexico. Additionally, the Court notes that the Settlement Agreement provided that it was to be interpreted by New York law. Finally, because this Court does not have personal jurisdiction over Defendant Aleta Heidt, trying the case in New Mexico against only Defendant William Heidt could lead to piecemeal litigation in that litigation against Defendant Aleta Heidt would have to be initiated in another forum. This fourth factor weighs heavily against this Court asserting personal jurisdiction over Defendant William Heidt.

### *States' Interest in Furthering Fundamental Substantive Social Policies*

This final factor "'focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations.'" *Id*. (quoting *OMI*, 149 F.3d at 1097). In the context of the claims raised in this lawsuit, New York, New Jersey, and New Hampshire have a substantive social policy interest in protecting minor children, like Plaintiff was, from unscrupulous parents (whether adoptive or not) who steal from their children. Exercise of personal jurisdiction by a New Mexico court over Defendant William Heidt would necessarily affect that social policy interest. This factor, therefore, weighs against this Court exercising personal jurisdiction over Defendant William Heidt.

In sum, although New Mexico has some interest in redressing alleged wrongs committed against New Mexico residents like Plaintiff and Plaintiff has a fairly strong interest in keeping the litigation in New Mexico due to traveling and possibly monetary considerations, the other three factors when viewed together establish a "compelling" case that other considerations would make an exercise of personal jurisdiction over Defendant William Heidt unreasonable. Consequently, Plaintiff has failed to make a *prima facie* showing that an assertion of personal

jurisdiction over Defendant William Heidt in this Court would not offend traditional notions of fair play and substantial justice. Defendant's motion to dismiss for lack of personal jurisdiction will be granted and this lawsuit will be dismissed without prejudice.[2]

IT IS ORDERED that Motion to Dismiss Pursuant to Rule 12(b)(2), Motion to Dismiss Pursuant to Rule 12(b)(3), Motion to Transfer Due to Forum Non Conveniens, and Motion for a More Definite Statement (Doc. No. 4) is granted in that this lawsuit will be dismissed without prejudice for lack of personal jurisdiction.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Although the initial settlement fund was set up in New York and New York law controls the interpretation of the Settlement Agreement, it is unclear whether most of the alleged misconduct occurred in New York, New Jersey, or New Hampshire. Because it is unclear from the briefing which forum, i.e., New York, New Jersey, or New Hampshire, would be the most appropriate forum to bring this lawsuit, the Court declines to rule on the motion to transfer to another forum.